IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                     Case No. 6:07-cr-10161-JTM-1

KAPPELLE SIMPSON-EL,

        Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on the United States' Motion to Amend the Payment Terms of a Judgment in a Criminal Case (Dkt. 239). The motion alleges that defendant has experienced a change in economic circumstances – namely, he is due to receive a settlement of $200,000 from the United States – which the United States argues should be paid over as restitution to the victims of defendant's offenses.[1]

### I. Background

Defendant Kappelle Simpson-el and four others were charged in a second superseding indictment with conducting an extensive scheme to steal cars from car dealers in Kansas, Missouri and Oklahoma, removing the vehicle identification numbers (VINs) and replacing them with VINs from other vehicles, and selling the stolen vehicles. Dkt. 87.  Defendant was found guilty by a jury on twenty-five counts and was acquitted on three counts. The counts of conviction included unlawfully

---

[1] The settlement funds remain with the United States pending resolution of this motion. Dkt. 244 at 3-4.

intending to sell a vehicle knowing that the VIN was removed (18 U.S.C. § 2321), unlawfully tampering with a VIN (18 U.S.C. § 511), knowingly moving a stolen vehicle in interstate commerce (18 U.S.C. § 2312), disposing of a stolen motor vehicle (18 U.S.C. § 2313), transporting illegally obtained property in interstate commerce (18 U.S.C. § 2314), and wire fraud (18 U.S.C. § 1343). On February 17, 2009, Judge Monti L. Belot sentenced defendant to a term of 72 months imprisonment, three years of supervised release, a $2,500 special assessment, and restitution of $432,930.00. Dkt. 126. Defendant's direct appeal was dismissed by the Tenth Circuit. Dkt. 168. Judge Belot subsequently denied defendant's motion for relief under 28 U.S.C. § 2255 (Dkt. 179); the Tenth Circuit dismissed an appeal of that ruling. Dkt. 201.

On December 21, 2015, the United States filed a notice of a change in defendant's economic circumstances. Dkt. 239. It alleged that defendant and the United States had recently agreed upon a settlement of $200,000 for negligent medical care provided to defendant while he was still incarcerated. The settlement was reached after defendant's release from custody. According to defendant's complaint in a suit filed in the U.S. District Court for the Eastern District of Arkansas, defendant injured his ankle while playing basketball at a federal correctional facility in Arkansas. He alleged the injury was initially misdiagnosed as an ankle sprain, although it was actually a torn Achilles tendon. Defendant claimed he was not given proper medical care, which caused him to reinjure the tendon several months later, and that the injury was not operated on until more than a year after the initial injury, a fact which allegedly precluded normal surgical results and caused him a permanent partial disability and unnecessary pain.

*See Simpson-el v. United States*, No. 2:12-cv-00004-SWW (E.D. Ark.). Defendant cites evidence that an independent medical evaluator found the chances for a good surgical outcome were severely compromised by the delay in treatment, and that defendant now has an overall 5% whole person permanent impairment due to the injury. The doctor also opined that defendant "may require further treatment, including surgery in the future." Defendant also cites evidence of a functional capacity evaluation by a physical therapist, who recommended certain physical restrictions on defendant's ability to work. He also cites the report of a vocational consultant, who opined that defendant could no longer work in the computer science or auto mechanic fields because "those positions are no longer available to him due to the restrictions outlined in the Functional Capacity Evaluation." The consultant estimated that defendant suffered an annual loss of income of over $28,000 from being unable to work in the computer science field, and an annual loss of income of about $6,000 from being unable to work as an auto mechanic.

The motion of the United States notes that a judge in the Eastern District of Arkansas found the United States could not attach the settlement fund through the Treasury Offset Program (TOP), because defendant was not in default on the restitution payment schedule established by the District of Kansas criminal judgment. *Simpson-el v. United States*, No. 12-cv-0004-SWW, slip op. at 4-5 (E.D. Ark., Dec. 1, 2015). But the judge observed that the sentencing court could revise the restitution order pursuant to 18 U.S.C. § 3664 for changed economic circumstances. *Id*. at 5. The United States now moves pursuant to 18 U.S.C. § 3664(k) for an order adjusting defendant's restitution

payment and requiring him to immediately pay over the settlement amount to the Clerk of the Court for payment of restitution to his victims. The United States points out that defendant has paid a total of $1,125 in restitution as of November 2015, and, taking into account credit for payments by co-defendants, he still owed a total of $403,334.37 to the victims of the offense. Dkt. 239 at 2.

Defendant argues it would be unjust to take the entire settlement because it was intended to compensate him for future medical expenses and future lost income. Dkts. 244, 251. He also argues a portion of the settlement is needed to pay attorney's fees ($40,000) and expenses ($4,360), and that some portion might be applied under the TOP towards his outstanding student loan debt, which exceeds $50,000. Defendant argues it would be inequitable to take the entire sum given "the careful balancing of interests" that went into the original restitution order, under which a limited percentage of his income goes towards restitution, while taking the entire sum would (he contends) allow the United States to escape responsibility for its negligent medical care. Defendant argues none of the settlement should be taken because it was intended to compensate him for an injury caused by the United States, and that taking it will leave him worse off than the original sentence. If the court does decide to take some portion, defendant argues it should be five percent of the net recovery after fees and expenses – the same percentage he currently pays for restitution from his gross household income.

**II. Discussion**

Section 3664(k) of Title 18 provides in part that upon receipt of notification of a material change in the defendant's economic circumstances, the court may adjust the

payment schedule for restitution, or require immediate payment in full, "as the interests of justice require."[2]

For purposes of § 3664(k), a change in a defendant's economic circumstances is material if it substantially affects his ability to pay restitution. *United States v. Grigsby*, 579 Fed.Appx. 680, 684 (10th Cir. 2014) (citing *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003)). Materiality is determined by "an objective comparison of defendant's financial condition before and after a sentence is imposed." *United States v. Dye*, 48 Fed. Appx. 218, 220, 2002 WL 31245976 (8th Cir. 2002). *See also United States v. Grigsby*, No. 12-10174-JTM, 2016 WL 1056560, at *4 (D. Kan. Mar. 16, 2016). In this case, it is clear that defendant's economic circumstances have changed materially with the settlement, as there is now a substantial new fund from which defendant could pay restitution. The issue is whether the "interests of justice" call for a change in the payment schedule established by the criminal judgment.

The court first determines that the portion of the settlement fund needed to pay defendant's attorney's fees and litigation expenses should be exempted from restitution. Absent the efforts of defendant's attorney in his civil case, there likely would have been no settlement fund, and the necessary and reasonable costs of creating the fund are thus equitably entitled to priority among claims to the fund. *Cf.* 26 U.S.C. § 6323(b)(8) (IRS Code recognizes a "super-priority" lien for attorneys who litigate a successful settlement and thereby create a fund that benefits the government). The United States

---

[2] The victims owed restitution have been notified of the change in defendant's economic circumstances, as required by 18 U.S.C. § 3664(k). *See* Dkt.240.

has not controverted defendant's evidence of the amount of his attorney's fees and expenses. Accordingly, the court finds the United States' request for turnover of the settlement should be denied with respect to amounts owing for defendant's attorney's fees ($40,000) and litigation expenses ($4,360). The court finds that these fees and expenses were reasonable and necessary under the circumstances of defendant's claim.

The court next rejects defendant's claim that because some portion of the settlement fund may represent compensation for lost future income, those funds should not be subject to restitution.  As an initial matter, the court notes that the vocational consultant cited by defendant offers no details for the finding that defendant's physical restrictions eliminate all possible employment in computer science and auto mechanic positions. Nor does that finding seem to square with defendant's own testimony that in the previous year, he worked full time at jobs involving computer programming. Dkt. 255 at 17. At any rate, even if defendant suffered some loss of income due to the negligence of the United States, that fact standing alone does not preclude using the settlement funds to pay restitution. Defendant claims it would be inequitable to do so because it would leave his loss uncompensated while allowing the United States to escape the consequences of its actions. But there are at least three parties to consider – the defendant, the United States, and the victims of defendant's offenses. Among the three, the victims -- who suffered a loss through no fault of their own as a direct consequence of defendant's purposeful, criminal conduct – stand apart as innocent parties whose economic losses most deserve to be compensated. Moreover, applying the settlement towards restitution does not benefit the United States -- which in fact

paid out $200,000 on defendant's claim – but it does benefit the defendant by lowering the balance of his restitution obligation. The interests of justice thus tend to favor payment of restitution despite the fact that the settlement may include compensation for lost income.

If a person obligated to make restitution receives substantial resources from any source, including a settlement, *during a period of incarceration*, the law states flatly that the person "shall be required to apply the value of such resources to any restitution or fine still owed." 18 U.S.C. § 3664(n). Although this does not apply because defendant was not incarcerated when he received the settlement, it does indicate the relative priority placed upon providing restitution to the victims of an offense. Of course, a person who is incarcerated does not typically pay for housing, meals, medical care, dependent needs, or other routine expenses of daily living, and those needs must be considered in determining an appropriate schedule for payment of restitution by a person who is not incarcerated.

In specifying the manner and schedule for payment of a restitution order, the court is directed at sentencing to consider several factors, including the financial resources and other assets of the defendant; the projected earnings and other income of the defendant; and any financial obligations of the defendant, including obligations to dependents. 18 U.S.C. § 3664(f)(2). There is no evidence or information in the record indicating that defendant is currently unable to meet his basic needs. Because defendant is the one with knowledge of the state of his finances, the court concludes that the burden is on him in these circumstances to show otherwise. *Cf. United States v. Sporrer*,

7

2014 WL 580919, *2 (W.D. Pa., Feb. 13, 2014) (it is defendant's burden to provide the court with sufficient information concerning his finances); 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant."). Defendant asserts that he will incur future medical expenses for pain medication due to his injury, but he does not quantify the expenses. Dkt. 244 at 4. Defendant has also asserted a need to provide some support for his dependents, although again he does not provide specific figures on the amount of support. According to information defendant provided to the U.S. Probation Office, defendant currently provides some support for two of his children, a 17-year old and an 18-year old.

Based upon the change in defendant's economic circumstances and the information provided, the court concludes that the interests of justice warrant the following change in the restitution payment schedule. Out of the settlement fund of $200,000, the attorney's fee of $40,000 and litigation expenses of $4,360 should be paid to defendant's attorney who obtained the civil settlement.  Based primarily on defendant's potential need for future medical expenses, as well as normal expenses for dependent care, the court concludes that $10,000 of the settlement fund should be paid to defendant. The remainder of the settlement fund, or $145,640, should be paid toward defendant's restitution obligation. Aside from the settlement fund, the prior schedule of restitution payments should remain in place, with defendant to make monthly installments of not less than 5% of his monthly gross household income over the remaining period of supervised release.

**IT IS THEREFORE ORDERED** this 10th day of May, 2016, that the United States' Motion to Amend the Payment Terms of the Judgment in a Criminal Case (Dkt. 239) is GRANTED IN PART.

Based on 18 U.S.C. § 3664(k), and in light of the $200,000 settlement fund in defendant's favor, the judgment previously entered in this case (Dkt. 126) is hereby amended as follows with respect to restitution. The United States, which currently retains the settlement fund of $200,000, shall remit the fund to the Clerk of the U.S. District Court for the District of Kansas, for the Clerk to pay out in accordance with the terms of this order.   Attorney Sandy McMath[3]  is entitled to payment of $44,360 from the settlement fund for his work in defendant's civil suit (*Simpson-el v. United States*, No. 2:12-cv-004-SWW (U.S. Dist. Ct., E.D. Ark.). The previously identified victims in this case are entitled to $145,640 from the settlement fund. The remaining portion of the settlement fund, $10,000, shall be paid to defendant Kappelle Simpson-el.

The defendant remains obligated to make monthly installments of not less than 5% of his monthly gross household income over the remaining period of supervised release.

                                                          ___s/ J. Thomas Marten_____
                                                          J. THOMAS MARTEN, JUDGE

---

[3] Sandy S. McMath, 711 West 3rd Street, Little Rock, Arkansas, 72201.